# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **H.H., D.B., and P.M.**

**No. 18-0504** (Ritchie County 17-JA-11, 17-JA-12, and 17-JA-13)

## MEMORANDUM DECISION

Petitioner Father J.M., by counsel Carl P. Bryant, appeals the Circuit Court of Ritchie County's May 3, 2018, order terminating his parental, custodial, and guardianship rights to H.H., D.B., and P.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian") for H.H., B. Scott Wolfe, filed a response on behalf of that child in support of the circuit court's order. The guardian for P.M., Katrina M. Christ, filed a response on behalf of that child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights and denying him post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the mother, alleging that they abused drugs and that their drug abuse negatively impacted their ability to parent the children.[2] Specifically, the DHHR alleged that the two older children ran away from home and, after they were recovered, reported that they did so because they overheard petitioner say he was "going to get rid of them." Both a school counselor and a Child Protective Services ("CPS") worker interviewed H.H., who consistently reported that his mother abused drugs and disclosed the location of her drugs within the home. Law enforcement officers searched the home and located drug paraphernalia and methamphetamine, as described by H.H. Upon speaking to an officer, petitioner admitted that he used illegal drugs and requested

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner is the biological father of P.M. and the stepfather of H.H. and D.B.

1

treatment. As such, the DHHR concluded that petitioner abused and/or neglected the children through his use and possession of illegal substances while caring for the children.

Petitioner filed a written stipulation in May of 2017 and was adjudicated as an abusing parent. He was subsequently granted a post-adjudicatory improvement period in July of 2017. As part of the terms and conditions of his improvement period, petitioner was required to complete a drug and alcohol assessment and follow the resulting recommendations, submit to random drug screens, maintain suitable housing and employment, attend individual counseling, maintain contact with the DHHR, participate in supervised visitation with the children, and participate in parenting and adult life services classes. As ordered, petitioner subsequently underwent a drug and alcohol assessment, which determined that he was at high risk for future drug abuse without proper treatment. Thereafter, petitioner entered into a substance abuse detoxification program, which he successfully completed, but failed to continue with a long-term inpatient rehabilitation program upon his release.

In October of 2017, the circuit court held a review hearing wherein it noted that the DHHR and guardians ad litem had filed a motion to revoke petitioner's improvement period due to his noncompliance. However, because petitioner had recently admitted himself to an inpatient treatment program, the circuit court deferred any decision regarding termination of his improvement period and continued the proceedings.

The DHHR filed a summary report with the circuit court in January of 2018, indicating that petitioner did not pay attention to the children during supervised visits, failed to submit to drug screens consistently throughout the case, tested positive for methamphetamine on one occasion when he did submit to a screen, and was homeless. Accordingly, the DHHR recommended that petitioner's post-adjudicatory improvement period be terminated and the case set for disposition.

In February of 2018, the circuit court held a dispositional hearing. Petitioner failed to attend and his counsel requested a continuance. Despite finding that petitioner had notice of the hearing and failed to maintain contact with his counsel, the circuit court granted the request.

The circuit court reconvened the dispositional hearing in March of 2018. Petitioner again failed to appear, but was represented by counsel. The DHHR presented the testimony of several witnesses who testified as to petitioner's noncompliance with his improvement period. Specifically, petitioner failed to participate in parenting and adult life skills classes, was absent from those classes more than fifteen times, and refused to participate in services entirely in December of 2017. Petitioner also failed to submit to random drug and alcohol screens and participate in substance abuse treatment and individualized counseling. Although petitioner completed a detoxification program and eventually entered into an inpatient substance abuse treatment program, he voluntarily left the program prematurely and failed to seek further treatment. From October of 2017 until January of 2018, petitioner failed to submit to drug and alcohol screens on nineteen separate occasions. Further, petitioner failed to attend multiple visits with the children, even though he confirmed the appointments twenty-four hours in advance. Testimony established that his failure to attend these visits had negative psychological and emotional impacts on the children, leading to the suspension of petitioner's supervised visitation

in January of 2018. After hearing evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental, custodial, and guardianship rights was in the children's best interests. It is from the May 3, 2018, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights when less-restrictive alternatives were available. He asserts that he participated in services including adult life skills and parenting classes, entered into an inpatient drug treatment program, and visited with the children, all of which demonstrate that he attempted to correct the issues of abuse and neglect. According to petitioner, the mother was granted a less-restrictive disposition and, based upon his similar performance during the underlying proceedings, he is entitled to the same. We disagree.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) sets forth that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

---

[3]The mother's custodial rights to the children were terminated pursuant to West Virginia Code § 49-4-604(b)(5). H.H.'s father is deceased. H.H. and petitioner's biological child, P.M., were placed in the maternal grandmother's home with a permanency plan of guardianship therein. D.B.'s father is a nonabusing parent and the permanency plan for the child is to remain in his care.

[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Here, the record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Petitioner was granted a post-adjudicatory improvement period and ordered to comply with services such as parenting and adult life skills classes, random drug screens, and supervised visitation. However, petitioner did not comply with services. Rather, he repeatedly failed to submit to random drug screens, missing nineteen required screens in only three months. While petitioner entered an inpatient substance abuse treatment program, he left the program after one week and failed to seek further treatment. Petitioner also failed to attend several supervised visits with the children and was described as emotionally distant when he did visit. Further, he exhibited aggressive, threatening behavior to the service providers, refused to participate in services entirely during December of 2017, and failed to implement any teachings from his parenting and adult life skills classes. Based on the record, it is clear that petitioner failed to respond to the services designed to reduce or prevent the conditions of abuse and neglect.

To the extent that petitioner argues he should be granted a less-restrictive disposition because the mother was granted such, we note that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Here, the mother demonstrated that she had a strong emotional bond with the children and, as such, the circuit court terminated only her custodial rights to the children. To retain his parental rights, petitioner had to demonstrate that he was able to properly care for the children. However, petitioner failed to establish a strong bond with the children and the record further demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and that termination was necessary for the children's welfare. Accordingly, we find that termination of petitioner's parental, custodial, and guardianship rights was proper and that he is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in denying him post-termination visitation. According to petitioner, he participated in visitation throughout the proceedings and demonstrated a close emotional bond with the children. Testimony established that the children

looked forward to their visits with petitioner and he avers that, under the circumstances, "continued visitation . . . is appropriate." We find no merit to petitioner's argument.

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). Here, post-termination visitation was not in the children's best interests. Testimony at the dispositional hearing established that petitioner failed to fully participate in supervised visitation with the children. Due to his noncompliance, petitioner was required to confirm visits with the children twenty-four hours in advance. Despite this precautionary measure, petitioner continued to miss visits such that they were suspended in January of 2018. Petitioner's failure to attend the visits negatively impacted the children psychologically and emotionally. During the visits that petitioner did attend, he was noted to exhibit very little emotion, was withdrawn, and sat in the corner with crossed arms. He failed to interact with the children and did not respond to their attempts to engage with him. Accordingly, we find that the circuit court correctly denied petitioner post-termination visitation with the children as it was clearly not in their best interests.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 3, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment